UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTATE OF FRANCES D. DEROSA,** *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **GOVERNOR PHILLIP D. MURPHY,** *et al.*, <br><br> Defendants. | Case No. 22–cv–02301–ESK–AMD <br><br><br> OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendant Governor Phillip Murphy and Commissioner Judith M. Persichilli's motion to dismiss (Motion) (ECF No. 40–1 (Mov. Br.)) plaintiffs' second amended complaint (ECF No. 34 (Second Am. Compl.)). Plaintiffs filed an opposition to the Motion (ECF No. 43 (Opp'n)), to which defendants filed a reply (ECF No. 44). For the following reasons, the Motion is **GRANTED**.

I.  BACKGROUND[1]

Plaintiffs are the children and administrators of the estate of decedents Frances D. DeRosa, Margeret MacKenzie, and Russel D. Murray. (Second Am. Compl. ¶¶ 1–3.) The decedents were residents of nursing homes in New Jersey who died between April and June 2020 after contracting COVID-19. Their deaths occurred after Governor Murphy issued Executive Order No. 103

---

[1] I incorporate by reference the factual overview and procedural history District Judge Zahid N. Quraishi provided in his opinion dated May 12, 2023. (ECF No. 22.) *Est. of DeRosa v. Murphy*, No. 22–02301, 2023 WL 3431218 (D.N.J. May 12, 2023). Before this case was reassigned to me on March 28, 2024, this case was being handled by Judge Quraishi. (ECF No. 39.)

declaring a public health emergency in New Jersey, and Commissioner Persichilli issued a directive entitled "Hospital Discharges and Admissions to Post-Acute Care Settings" (Directive). (*Id.* ¶¶ 8, 9.) The Directive prohibited facilities, such as the nursing homes the decedents resided in, "from denying admission or re-admission of patients/residents that tested positive for [COVID-19]" and required "hospitalized patients/residents who were determined to be 'medically stable,' to be tested for [COVID-19] prior to admission/re-admission." (*Id.* ¶¶ 10, 11.) After the issuance of the Directive, defendants were warned that such a promulgation would lead to unnecessary deaths. (*Id.* ¶ 12.) Defendants, nevertheless, continued to act with a "deliberate indifference which resulted in the highest per-capita nursing home [COVID] death rate in the nation." (*Id.* ¶ 30.)

On April 20, 2022, the Estate of Ms. DeRosa commenced this action. (ECF No. 1.) The initial complaint alleged that by issuing Executive Order No. 103 and the Directive, defendants violated Ms. DeRosa's right to life pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and the New Jersey Civil Rights Act. (*Id.* ¶¶ 79, 80, 94.)[2] On May 12, 2023, Judge Quraishi granted defendants' motion to dismiss, finding that because no clearly established right was violated, defendants were entitled to qualified immunity. (ECF Nos. 22, 23.) Pursuant to Judge Quraishi's opinion and order (*id.*), the Estate of Ms. DeRosa amended its complaint, adding the Estates of Ms. MacKenzie and Mr. Murray as co-plaintiffs and raising class claims on behalf of "[a]ll individuals who were New Jersey nursing home and/or assisted living facility residents where a COVID positive patient was admitted after the …

---

[2] The complaint also raised claims against the nursing home Ms. DeRosa resided in and certain administrators of the nursing home. (ECF No. 1.) Upon the Court finding that the claims against the nursing home and its administrators were moot (*see* ECF Nos. 30, 31), they were removed from this action (*see* Second Am. Compl.).

Directive and who subsequent contracted … and then died of COVID." (Second Am. Compl. ¶¶ 1–4.)[3]

The second amended complaint alleges that defendants violated the decedents' clearly established rights to freedom from cruel, unhuman, or degrading treatment, safe conditions, life, bodily integrity, and freedom from state-created danger and rights under the Federal Nursing Home Reform Act (FNHRA). (*Id.*) On April 1, 2024, defendants filed the Motion seeking dismissal of plaintiffs' complaint for failure to plausibly allege any violation of a legal right. (Mov. Br. pp. 21–38.) Defendants assert protection under qualified immunity and, in the alternative, the Public Readiness and Emergency Preparedness Act and Emergency Health Powers Act. (*Id.* pp. 39–48.)

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it

---

[3] The Estates of Ms. MacKenzie and Mr. Murray had commenced separate actions in this court against defendants. *Estate of Margaret MacKenzie v. Murphy,* Case No. 22–02500 (D.N.J. Apr. 8, 2022), ECF No. 1; *Estate of Russell Murray v. Murphy*, Case No. 22–03542 (D.N.J. June 7, 2022), ECF No. 1. Since the Estates of Ms. MacKenzie and Mr. Murray joined in this action, they voluntarily dismissed their original actions. Order of Voluntary Dismissal, *Estate of Margaret MacKenzie*, (May 24, 2024) ECF No. 15; Order of Voluntary Dismissal, *Estate of Russell Murray*, (May 24, 2024) ECF No. 25.

requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim. *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679.) Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

### III. DISCUSSION

Plaintiffs allege that in issuing Executive Order No. 103 and the Directive, defendants violated the decedents' statutory rights and state and federal constitutional rights. Defendants, however, argue that they are immune from any liability because these rights were not clearly established such that a reasonable official would have found Executive Order No. 103 and the Directive to be unlawful at the time they were issued.

Of note, since the New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983, claims brought under these acts are interpreted "analogously." *Castro v. New Jersey*, 521 F. Supp. 3d 509, 517 (D.N.J. 2021). In assessing the second amended complaint, I do the same.

#### A.  Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "[T]he burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019). "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *Id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (noting that a qualified immunity analysis consists of two prongs, with one prong asking whether the plaintiffs has made out a violation of a statutory right, and the other prong asking whether thar right was clearly established at the time of the challenged conduct). Hence, "[t]he inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," such that it is "settled law." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). A principle is settled law if it is dictated by "controlling authority" or a "consensus of cases of persuasive authority." *Id.* "It is not enough that the rule is suggested by then-existing precedent." *Id.* Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* There is no need for a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate," such that the "violative nature of particular conduct" is not defined at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011).

While plaintiffs argue that it is premature for the Court to determine whether qualified immunity applies at this stage of the litigation (Opp'n p. 34),

this argument is baseless. As explained in further detail below, I find that defendants are protected by qualified immunity.[4]

### B.  Rights under the FNHRA

The FNHRA was enacted "to ensure[] that nursing homes that receive Medicaid funding respect and protect their residents' health, safety, and dignity." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 143 (2023); 42 U.S.C. §1396r. Pursuant to the FNHRA, "[a] nursing facility must protect and promote the rights of each resident." 42 U.S.C. §1396r(c)(1)(A). Such rights include, among others, the rights to: "a dignified existence, self-determination, and communication with an access to persons and services inside and outside the facility"; participate in planning their treatments; be free from restraints and abuse; receive reasonable accommodations; voice grievances; and refuse transfers. 42 U.S.C. §1396r(c)(A)(i)–(xi); 42 C.F.R. §483.10. Given this statutory language, plaintiffs argue that the "FNHRA unambiguously confers a multitude of rights upon" them and "[t]he plain statutory language of the FNHRA renders those rights as clearly established for purposes of defeating qualified immunity." (Opp'n p.42; Second Am. Compl. ¶114.)

Three years after Executive Order No. 103 and the Directive were issued, the Supreme Court held that the FNHRA confers individually enforceable rights on nursing home residents and thus, a plaintiff may bring claims pursuant to Section 1983 claims against a state-run nursing facility. *Talevski*, 599 U.S. at 180. While plaintiffs rely upon this holding in support of their argument that defendants are not immune from having violated the decedents'

---

[4] Since I find that defendants are protected by qualified immunity, I do not address the arguments defendants raised in the alternative. (*See* Mov. Br. pp.45–49.)

clearly established statutory rights (Opp'n pp. 42, 43), their reliance is misplaced.

Here, plaintiffs bring claims against state officials for the issuance of promulgations governing the admission of residents to nursing homes during the unprecedented COVID-19 pandemic. *Talevski* neither "contemplate[s] the circumstances presented by the instant case" nor "place[s] the statutory or constitutional questions raised in this case beyond debate." *Arbeeny v. Cuomo*, No. 22–02336, 2025 WL 71729 at *8 (E.D.N.Y. Jan. 10, 2025). Instead, *Talevski* provides a plaintiff with a private right of action under Section 1983 against state-run nursing facilities. "This broad proposition is insufficient to support a finding that the [d]ecedents' rights under the FNHRA were clearly established with respect to public health regulations imposed by the state." *Id.*

### C. Constitutional Rights

Plaintiffs argue that decedents had clearly established rights to: (1) be free from cruel, unhuman, or degrading treatment; (2) safe conditions; (3) life; (4) bodily integrity; and (5) be free from state-created danged. (Second Am. Compl. ¶ 94.)

Judge Quraishi already determined when resolving defendants' first motion to dismiss that "the right to life in the context of an infectious disease— has never been recognized, let alone addressed by courts." (ECF No. 22 p. 10.) *Est. of DeRosa*, 2023 WL 3431218 at *5. The right to life claim in the second amended complaint is identical to the claim asserted in the initial complaint. (*See* ECF No. 1.) Plaintiffs argue that by reasserting the right to life claim, they "seized upon the precise remedy expressly granted by Judge Quraishi" to file an amended complaint. (Opp'n p. 47.) This claim is, however, procedurally barred. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (noting that "the doctrine of law of the case posits that when

7

a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

As to the decedents' asserted right to be free from cruel, unhuman, or degrading treatment, plaintiff argues that this right is a "universally accepted customary human rights norm" that was established before defendants' issued Executive Order No. 103 and the Directive. (Opp'n pp. 43.) In support of their position, plaintiffs cite to cases addressing claims brought under the Foreign Services Immunities Act, the Torture Victim Protection Act, and the Alien Tort Claims Act. (*Id.* (citing *Abebe–Jira v. Negredo*, 72 F.3d 844 (11th Cir. 1996); *Najarro de Sanchez v. Banco Central de Nicaragua*, 440 F.2d 1385 (5th Cir. 1985); *Xuncax v. Gramajoi*, 886 F. Supp. 162 (D.Mass. 1995); *Paul v. Avril*, 901 F. Supp. 330 (S.D.Fla. 1994)).) None of these statutes are implicated by the claims in this case. Thus, these cases cannot serve as a basis to find that the right to be free from cruel, unhuman, or degrading treatment was clearly established as it relates to defendants' conduct here.

As to decedents' alleged rights under the Fifth and Fourteenth Amendments, specifically the right to safe conditions, bodily integrity, and freedom from state-created danger, plaintiffs again fail to cite to cases that would demonstrate, beyond debate, that these due process rights were clearly established in the context of public health policy decisions at the time Executive Order No. 103 and the Directive were issued. Plaintiffs also refer to the Eighth Amendment and argue that "[i]f it is [a] cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." (Opp'n pp. 44, 49.) Once again, plaintiffs provide no support for this position. It is well-settled that the protections under the Eighth Amendment are limited to criminal punishments and would not apply to residents of a nursing home. *Ingraham v. Wright*, 430 U.S. 651, 668–69 (1977).

8

To date, "the Supreme Court has not addressed the limits imposed by due process on a [s]tate's power to manage infectious diseases." *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 190 (2d Cir. 2020); *see Arbeeny*, 2025 WL 71729 at *10. "State officials were tasked with acting quickly in response to evolving and dynamic circumstances during the COVID-19 pandemic." *Arbeeny*, 2025 WL 71729 at *10. "As such, courts … across the country have routinely granted state officials qualified immunity for policies implemented in response to the ongoing public health crisis." *Id.* State officials must be given "especially broad" latitude to act "in areas fraught with medical and scientific uncertainties," and generally "should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020). All of these considerations are present here. Defendants issued Executive Order No. 103 and the Directive "in the throes of a rare, once-in-a-century global health crisis for which guidance has constantly evolved," at a time that it was not sufficiently clear to a reasonable official that what he or she was doing violated that right. *See Wright-Gottshall v. New Jersey*, No. 21–18954, 2023 WL 3183288, at *8 (D.N.J. May 1, 2023). Accordingly, plaintiffs' state and federal constitutional rights claims are barred by the doctrine of qualified immunity.

### IV. CONCLUSION

For the reasons stated above, the Motion is **GRANTED**. While I recognize that the dismissal of a complaint with prejudice is a harsh remedy, granting leave to amend is not necessary if an "amendment would be inequitable or futile." *New York v. Hill*, 528 U.S. 110, 118 (2000); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Given that plaintiffs' have already had the opportunity to amend their complaint (*see* ECF Nos. 22,

23), I find that any further amendment would be futile. Accordingly, the second amended complaint is **dismissed with prejudice**.

                                                   */s/ Edward S. Kiel*
                                                   **EDWARD S. KIEL**
                                                   **UNITED STATES DISTRICT JUDGE**

Dated: January 21, 2025